IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MICHAEL J. GRAY                                                                                    PLAINTIFF
Reg. #06302-010

v.                                          3:22CV00144-BSM-JTK

ROBERT CASE, et al.                                                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I.    Introduction**

Michael J. Gray ("Plaintiff") currently is incarcerated at the Seagonville Federal Correctional Institution in Seagonville, Texas. Plaintiff's claims in this case arise from the time when he was in custody at the Greene County, Arkansas, Detention Center (the "Detention Center"). (Doc. No. 2). Plaintiff sued multiple Greene County officials in their personal and official capacities under 42 U.S.C. § 1983. (Id.). Only Plaintiff's claims against Detention Center Administrator Robert Case and Grievance Officer Felisha Rowland (collectively, "Defendants") remain pending. (Doc. Nos. 9, 14, 33, 34).

Defendants have filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 42-44).

On April 14, 2023, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by May 15, 2023. (Doc. No. 45). The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute. (Id.) Plaintiff filed his Response on May 15, 2023. (Doc. Nos. 46, 47).

After careful consideration, and for the reasons set out below, the Court recommends Defendants' Motion be granted.

**II.      Plaintiff's Complaint**

Plaintiff's allegations arise from the alleged side effects of a disinfectant used at the Detention Center in 2021 to combat Covid-19. (Doc. No. 2). Around July 27, 2021, the Detention Center began using a fogger to disinfect against Covid-19. (Id. at 1). The Detention Center used the fogger daily until approximately November 2021. (Id. at 1-2). According to Plaintiff, the fogger "is sprayed into the pods while inmates are locked in their cells." (Id. at 2). Cell doors are not sealed and have about a one-inch gap at the bottom. (Id.).

When the Detention Center began using the fogger, Plaintiff's nose and throat "would burn and this would cause severe coughing and irritation" for about 15-20 minutes, or around the same time the fog cleared away. (Id.). Plaintiff's nose and throat often remained sore and raw afterwards. (Doc. No. 2 at 2).

Plaintiff submitted a general inquiry to staff detailing the allegations above. (Id. at 3). Plaintiff requested the Safety Data Sheet for the fogger. (Id.). Defendant Rowland responded by saying that the fogger was CDC approved, but she did not mention the data sheet. (Id.).

Some days later Plaintiff filed a grievance setting out these same issues. (Id.). Defendant Rowland responded in a similar manner, and additionally explained that the Detention Center did not allow most papers down the hall because of Covid-19. (Id.).

On August 3, 2021, Plaintiff submitted a sick call, complaining of the sore throat and cough Plaintiff had as a result of the fogger. (Doc. No. 2 at 3). Nurse Glenn responded, telling Plaintiff he should stay in his room after the fogger was used and asking Plaintiff if he would like to be seen. (Id.). Plaintiff submitted a second sick call on August 8, 2021 in connection with the same issues, and said he would like to be seen. (Id.).

On August 10, 2021, a nurse Burns, who was accompanied by two officers, examined plaintiff. (Id. at 3-4). Nurse Burns asked the guards the name of the chemical; the guards did not know, but one guard allegedly responded with "[i]t's rough." (Id. at 4). According to Plaintiff, nurse Burns responded with "well, it's killing them," and pointed to Plaintiff. (Id.). Nurse Burns prescribed Plaintiff medication, but the pills did not help. (Doc. No. 2 at 4). Plaintiff later learned that the chemical used was "HDQ Neutral." (Id.). Plaintiff seeks damages among other relief. (Id. at 7).

### III. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary

3

judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV. Facts and Analysis

Plaintiff alleged deliberate indifference to his serious medical needs. Plaintiff's allegations also call into question the conditions of his confinement.

### A. Qualified Immunity

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. (Doc. No. 43 at 20-21). Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most

4

favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]  "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

    **B.**    **Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs**

Plaintiff was housed at the Detention Center at the times relevant to his claims in this lawsuit. Plaintiff explained, though, that he was "pending transfer to the Federal Bureau of Prisons." (Doc. No. 2 at 6). As such, Plaintiff was a convicted prisoner at the time of the events

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

giving rise to this lawsuit. As a convicted prisoner, Plaintiff's deliberate indifference to serious medical needs claims fall under the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

***

Plaintiff claims that Defendant Rowland was deliberately indifferent to his serious medical needs "by disregarding [Plaintiff's] health and safety by disregarding [his] inquiry and grievance informing her of [Plaintiff's] respiratory issues and [his] request for a[] [Safety Data Sheet]." (Doc. No. 2 at 5).

Defendants argue, among other things, that Plaintiff failed to establish that he had an objectively serious medical need. (Doc. No. 43 at 13-14).

Because Plaintiff suffered from no condition diagnosed by a doctor, Plaintiff must present proof that his condition was so obvious that a layperson would recognize the need for treatment. Schuab, 638 F.3d at 914.

As acknowledged by Plaintiff, inmates "are indeed locked in [their] cells while [the fogger] is in use." (Doc. No. 44-4 at 3). It is undisputed that the fogger was not used in the cells; rather, the fogger was used in the open pod area. (Doc. No. 44-3; Doc. No. 44-6 at 4). According to Defendants, the open pod area and cells operate on separate ventilation systems. (Doc. No. 44-7 at 5). Defendants further maintain that the air from the open pod area where the fogger was used is not circulated into the cells. (Id.). It is undisputed that there is a roughly 1-inch gap between the ground and the bottom of the cell door leading to the open pod area. (Id. at 4).

Plaintiff disputes that certain grievances and sick call requests were filed by him. (Doc. No. 47 at 1-2). This dispute, however, does not affect the outcome of this lawsuit. Webb, 144 F.3d at 1135.

Plaintiff also disputes Defendants' statement that the open pod area and cells operate on different ventilation systems. (Doc. No. 44 at ¶ 8; Doc. No. 47 at 2). Plaintiff disputes this statement because he does not "have access to information regarding the ventilation system of" the Detention Center. (Doc. No. 47 at 2). Plaintiff does not specify a reason why he lacks access to the information. FED. R. CIV. P. 56(d). With regard to asserting that a fact is genuinely disputed, a party must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

7

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). By simply disputing the statement, Plaintiff did not properly address Defendants' assertion that the cells and open pod area operate on different ventilation systems. As such, the Court may consider this fact undisputed. FED. R. CIV. P. 56(e)(2).

In response to Defendants' Interrogatory No. 7, Plaintiff explained that when the fogger was used, he experienced the following symptoms for approximately 15 minutes: severe burning of the throat and nasal passages, coughing, watery eyes. (Doc. No. 44-8 at 10). After the fogger was used every day for approximately one week, Plaintiff "suffered a continual sore throat, cough, and chest pain. This started in early July and ended early November. (Id.). Plaintiff also said he suffered difficulty breathing. (Id. at 11).

The Court has reviewed the grievances and sick call requests that Plaintiff filed, along with Plaintiff's medical file. (Doc. Nos. 44-3, 44-4, 44-5). The record reflects that on July 29, 2021, Plaintiff complained that after the fogger is used Plaintiff's "throat and nose become irritated and [he] cough[s]." (Doc. No. 44-3 at 1). Two days later, Plaintiff made the same type of complaints and asked for the Safety Data Sheet. (Id. at 2).

On August 3, 2021, Plaintiff again complained of "nose and throat irritation as well as coughing" in a sick call request. (Doc. No. 44-4 at 2). Nurse Glenn asked Plaintiff if he would like to be seen for sick call. (Id.). On August 8, 2021, Plaintiff said that he would like to be seen by medical. (Id. at 3). Plaintiff was seen by medical and given one allergy tablet per day for one week. (Doc. No. 44-8 at 10; Doc. No. 44-5 at 12). Plaintiff filed no additional grievances or sick call requests in connection with the symptoms he experienced after the fogger was used. Plaintiff says that his "sore throat and other continual symptoms faded by the end of November, after the fogger stopped being used." (Doc. No. 44-8 at 10).

Numerous courts have found that symptoms such as a sore throat, cough, and burning nose do not constitute a serious medical need. See, for example, Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) ("breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are, objectively speaking, relatively minor"); Starbeck v. Linn Cnty. Jail, 871 F. Supp. 1129, 1142 (N.D. Iowa 1994) (citing Griffin v. DeRobertis, 557 F.Supp. 302, 306 (N.D.Ill.1983) (while aches and sore throats may not constitute serious medical needs, becoming ill to the point of spitting up blood does.)); Carrow v. Williams, No. 3:18-CV-03014, 2018 WL 934825, at *2 (W.D. Ark. Feb. 16, 2018) (citing Martinson v. Leason, 22 F. Supp. 3d 952, 963 (D. Minn. 2014) (diarrhea, cough, bloody sputum, and other cold-like symptoms did not constitute serious medical need); Ware v. Fairman, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (flu-like symptoms not serious medical need)). The Court finds that cold-type symptoms of the type Plaintiff suffered, without more, do not rise to the level of a serious medical need. Further, Plaintiff received medical attention for the symptoms of which he complained. Nothing in the record indicates that Plaintiff ever complained that he had an underlying medical condition that put him at extra risk from the fogger. And Plaintiff did not identify any additional, more serious symptoms.

Plaintiff has not met proof with proof to establish that Defendants were deliberately indifferent to his serious medical needs. Accordingly, Defendants are entitled to qualified immunity and summary judgment should be entered in their favor on Plaintiff's deliberate indifference to serious medical needs claims.

    C.    **Personal Capacity Claims—Conditions of Confinement**

Plaintiff's allegations call into question the conditions of his confinement. To state an Eighth Amendment claim challenging conditions of confinement, an inmate must show the alleged violation is "'objectively [and] sufficiently serious,'" that is, the inmate "'is incarcerated under

9

conditions posing a substantial risk of serious harm.'" Kulkay v. Roy, 847 F.3d 637, 642-43 (8th Cir. 2017). An inmate must also show that the defendant knew of the risk and failed to respond to it in a reasonable way. See Id. at 643.

As Plaintiff pointed out in his response, the Safety Data Sheet reflects that HDQ neutral is "harmful if inhaled"; the contents of the fogger can cause nasal discomfort and coughing if inhaled. (Doc. No. 46 at 2; Doc. No. 44-6 at 8). But Defendants used the fogger in the day room when inmates were locked in their cells, with their doors closed. As mentioned above, the day room and the inmate cells ran on different ventilation systems; the air from the day room was not circulated into the cells. While there was a 1-inch gap under the cell doors, Detention Center policy instructed employees "not [to] fog into or under cell doors that are occupied." (Id. at 4). Additionally, inmates were kept out of fogged areas for 15 minutes to ensure all surfaces were dry. (Id.). Under these circumstances, Plaintiff has not established that Defendants knew of any harm that Plaintiff would suffer in his cell with the door closed as a result of the fogger being used in the pod area.

The fogger was used to control the spread of Covid-19 at a time when the disease was wide-spread; areas where individuals were in close contact, such as jails and prisons, were particularly at risk. Plaintiff acknowledges that "the use of the disinfectant HDQ Neutral was for combating Covid-19 [and] that it [is] CDC approved for such." (Doc. No. 46 at 3). Plaintiff argues, however, that inmates "should have been cleared of the area completely, not simply locked in an adjacent cell." (Id. at 3). The Detention Center took steps to protect inmates from any harmful effects of the fogger while also mitigating the risks posed by the Covid-19 virus. Even if there was a violation, under these unique circumstances there is no clearly established law that would have put Defendants on notice that their behavior was unlawful. As such, Defendants are

entitled to qualified immunity and summary judgment on Plaintiff's condition of confinement claims should be entered in Defendants' favor.

### D. Official Capacity Claims

Plaintiff sued Defendants in their official and personal capacities. Plaintiff has not established any violation by a named Defendant in his or her personal capacity. As a result, Plaintiff's official capacity claims also fail. See Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 674 (8th Cir. 2007) (internal citation omitted).

### E. No Material Facts in Dispute

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

### V. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 42) be GRANTED;

2. Plaintiff's Complaint be DISMISSED with prejudice.

Dated this 19th day of May, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE